**Michael J. Petitti, Jr. – 011667**
**Paige C. Pataky – 029951**
**SHIELDS PETITTI & ZOLDAN, PLC**
**5090 N. 40th Street, Suite 207**
**Phoenix, Arizona 85018**
**Telephone: (602) 718-3330**
**Facsimile: (602) 675-2356**
**E-Mail: mjp@shieldspetitti.com**
**E-Mail: pcp@shieldspetitti.com**

**Lauren McDermott (Pro hac vice pending)**
**MOONEY, GREEN, SAINDON,**
**  MURPHY & WELCH, P.C.**
**1920 L Street, N.W., Suite 400**
**Washington, D.C. 20036**
**Telephone: (202)783-0010**
**Facsimile (202)783-6088**
**Email: lmcdermott@mooneygreen.com**

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Glynn, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| City of El Mirage; El Mirage Fire Department; and Michael Long, in his individual and official capacities, | |
| Defendants. | |

Plaintiff, Shannon Glynn, by and through the undersigned counsel, for his Complaint against Defendants, the City of El Mirage, the El Mirage Fire Department, and Fire Chief Michael Long, states as follows:

1303179.1

## INTRODUCTION, JURISDICTION AND VENUE

1. This is a civil action brought under 42 U.S.C. § 1983 to redress Defendants' unlawful deprivation of Plaintiff's rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution. Plaintiff's Complaint also asserts claims under the Arizona Employment Protection Act, the Arizona Public Safety Employees Act, and the Fair Labor Standards Act ("FLSA").

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331; 28 U.S.C. §§ 2201-02; 28 U.S.C. § 1337; 28 U.S.C. § 1343; 28 U.S.C. § 1367; and 42 U.S.C. § 1983.

3. Venue is proper under 28 U.S.C. § 1391 because all Defendants are located in this district and the actions and omissions complained of herein took place within this district.

4. Prior to commencing this action, Plaintiff timely served upon El Mirage a Notice of Claim, pursuant to A.R.S. § 12-821.01, to afford Defendants an opportunity to investigate the merits of Plaintiff's claims against them, to assess their liability, and to compensate and resolve Plaintiff's claims. A true and correct copy of the Notice of Claim is attached as Exhibit 1.

5. Defendants failed to respond to the Notice of Claim within the sixty (60)-day time period set forth in A.R.S. § 12-821.01(E).

## PARTIES

6. Plaintiff Shannon Glynn is an individual who resides in Maricopa County, Arizona. Mr. Glynn is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983, and a "person" within the meaning of 42 U.S.C. § 1983.

1303179.1

7. Defendant City of El Mirage ("El Mirage" or the "City") is a municipal corporation located in Maricopa County, Arizona. Defendant El Mirage is a "person" within the meaning of 42 U.S.C. § 1983.

8. Defendant El Mirage Fire Department ("Fire Department") is an agency of and operated by the City. Defendant Fire Department is a "person" within the meaning of 42 U.S.C. § 1983.

9. Defendant Michael Long ("Defendant Long") is the Chief of the Fire Department. As such, he is responsible for overseeing the operations and staff of the Fire Department. Defendant Long is sued in both his official and individual capacities and is personally liable for violations of law and relief claimed herein. Defendant Long is a "person" within the meaning of 42 U.S.C. § 1983.

**JURY DEMAND**

10. Plaintiff demands a jury trial in this matter.

**FACTUAL ALLEGATIONS**

*Mr. Glynn's Applications to and Employment with the Fire Department*

11. Plaintiff Shannon Glynn has been a fire fighter for twenty-six (26) years. Throughout his career, he has earned several paramedic of the year awards from employers and a community paramedic of the year award from an outside organization.

12. Mr. Glynn was employed as a Fire Fighter, and later as a Fire Engineer, with the El Mirage Fire Department from March 2021 until his termination in October 2022.

3

13. Prior to working for El Mirage, Mr. Glynn worked for the City of Buckeye Fire Department ("Buckeye") from approximately January 2005 to January 2019.

14. Mr. Glynn applied to work as a Fire Fighter for El Mirage in October 2020. A true and correct copy of Mr. Glynn's application for the position of Fire Fighter with El Mirage (the "2020 Application") is attached as Exhibit 2.

15. The 2020 Application was a comprehensive, multipage application with a number of background and employment-related questions. As relevant to the allegations herein, the 2020 Application included a list of seventeen (17) "Agency-Wide Questions" for the applicant to answer. Exhibit 2, p. 6-7.

16. Question 8 of the Agency-Wide Questions directed the applicant to provide an answer to the question: "Have you ever been suspended, terminated, or resigned in lieu of termination?" *Id.*, p. 6. In response to this question, Mr. Glynn answered: "Yes." *Id.*

17. Question 9 of the Agency-Wide Questions then directed the applicant to "please explain the circumstances" if the applicant answered "Yes" in response to Question 8. *Id.* Mr. Glynn responded to Question 9 as follows: "Was terminated by the city of Buckeye after being offered an opportunity to resign from a citizen complaint. Would like the opportunity to provide more details in-person." *Id.*

18. After submitting the 2020 Application, Mr. Glynn was interviewed by a City Hiring Board that included a City HR specialist and two (2) El Mirage Fire Captains.

4

1303179.1

19. During this interview, Mr. Glynn spoke in detail about the circumstances relating to his discharge from Buckeye. He explained that the incident involved a former girlfriend and her ex-husband.

20. While explaining this incident to the Hiring Board, Mr. Glynn acknowledged that he did not appropriately handle the incident and was not completely truthful at the time, but he was remorseful and admitted that he should have better handled the situation. He explained that he has since learned from the incident and has used the learning experience to become a better member of the fire service, as well as an example to others about how poor personal choices can affect one's career.

21. The Hiring Board thanked Mr. Glynn for providing this information and did not ask any follow-up questions about the incident.

22. Mr. Glynn then participated in a second interview with Chief Juan Rodriguez and Assistant Fire Chief Chris Richardson. During the interview, Chief Rodriguez and Assistant Chief Richardson asked Mr. Glynn whether there were any pending criminal charges against him, to which Mr. Glynn truthfully responded that there were not.

23. Finally, Mr. Glynn participated in a third-round interview with Defendant Long and Assistant Chief Richardson. Neither asked any additional questions about the Buckeye incident.

24. El Mirage ultimately hired Mr. Glynn as a Fire Fighter in March 2021. As a newly hired employee, Mr. Glynn was subject to a one-year probationary period.

1303179.1

25. Nonetheless, Mr. Glynn performed this role well and without any disciplinary issues. Indeed, Mr. Glynn was routinely told by supervisors that he was meeting and/or exceeding performance expectations.

26. In October of 2021, Mr. Glynn, seeking a promotion, applied to the position of Fire Engineer with El Mirage. A true and correct copy of Mr. Glynn's application for the position of Fire Engineer with El Mirage (the "2021 Application") is attached as Exhibit 3.

27. As was the case with the 2020 Application, the 2021 Application included a list of seventeen (17) "Agency-Wide Questions" for the applicant to answer. Exhibit 3, p. 6-7. Question 8 of the Agency-Wide Questions directed the applicant to provide an answer to the question: "Have you ever been suspended, terminated, or resigned in lieu of termination?" *Id.*, p. 6. In response to this question, Mr. Glynn again answered: "Yes." *Id.*

28. Question 9 of the Agency-Wide Questions then directed the applicant to "please explain the circumstances" if the applicant answered "Yes" in response to Question 8. *Id.* Mr. Glynn responded to Question 9 as follows: "Was terminated by the city of Buckeye after being offered an opportunity to resign from a citizen complaint. Would like the opportunity to provide more details in-person." *Id.*

29. In November of 2021, El Mirage promoted Mr. Glynn to Fire Engineer. Because he accepted a new role within the Fire Department, Mr. Glynn began a new, one-year probationary period. Again, Mr. Glynn performed well in this new role, receiving positive feedback from his supervisors and no disciplinary actions.

1303179.1

*Mr. Glynn's Union Activities*

30. During his employment with the Fire Department, Mr. Glynn was a member and the Vice President of the Northwest Valley Firefighters Association, International Association of Fire Fighters Local 4361 ("Local 4361" or the "Association"), a labor union representing certain fire protection employees of the Fire Department.

31. As Vice President of the Association, Mr. Glynn was vocal about matters affecting both Local 4361 members and the Fire Department in general. For instance, Mr. Glynn was routinely involved in communications with the Fire Chief and other Fire Department and City officials regarding the Memorandum of Understanding ("MOU") between El Mirage and the Association, as well as other terms and conditions of the member fire fighters' employment.

32. During these communications, Mr. Glynn repeatedly expressed his concerns about high employee turnover in the Fire Department. Indeed, one of the Association's primary objectives was to remedy this high turnover.

33. Additionally, in August 2022, in his capacity as Vice President of Local 4361, Mr. Glynn inquired with the federal Department of Labor ("DOL") about issues relating to fire fighter pay, including overtime pay. In particular, Mr. Glynn believed that El Mirage's practice of averaging fire fighters' overtime pay across several workweeks could be a violation of applicable wage and hour laws.

1303179.1

34. Mr. Glynn advised El Mirage that he had submitted this inquiry to DOL. Deputy City Manager Robert Nilles responded that he relished the DOL's investigation, because he was confident that he was doing everything right with respect to fire fighter pay.

35. The Association, through Mr. Glynn, also raised concerns about the City's refusal to follow a December 2021 arbitration decision relating to the MOU (the "Arbitration Decision"). Specifically, Local 4361 filed a grievance relating to the City's failure to make certain payments to fire fighters as required by the MOU. Although the grievance arbitrator found in favor of the Association and agreed that the MOU required El Mirage to make the payments, El Mirage refused (and to date continues to refuse) to follow the Arbitration Decision.

36. On or about October 26, 2022, during a meeting with City Manager Crystal Dyches, Deputy City Manager Nilles, and Human Resources ("HR") Director Dawn Kurek relating to staffing and other pay issues, Mr. Glynn raised El Mirage's refusal to follow the Arbitration Decision. Mr. Glynn stated that he had sought the assistance of the IAFF's legal counsel to review the matter and bring a lawsuit to enforce the decision, if necessary, but that such action was not the Association's preference.

37. Thereafter, on or about October 27, 2022, Mr. Glynn, in his capacity as Association Vice President, along with the Association's Secretary-Treasurer Jeffrey Kinkade, met with City Councilmen David Shapera and Roy Delgado for a scheduled meet and greet. During this meeting, Mr. Glynn aired the Association's frustrations with the El

Mirage's refusal to follow the recommendations of the Arbitration Decision. Councilmen Shapera appeared receptive to the Association's concerns.

38. On or about November 4, 2022, Mr. Glynn met with Councilwoman Donna Winston as part of another scheduled meet and greet. Mr. Glynn and Councilwoman Winston discussed some of the same concerns he raised with City management, the Fire Department, and Councilmen Shapera and Delgado.

*El Mirage's Retaliatory Termination of Mr. Glynn*

39. A mere three (3) days later, on November 7, 2022, Mr. Glynn was called into a meeting with Defendant Long and HR Director Kurek. During this meeting, Defendant Long and Ms. Kurek first advised Mr. Glynn that he had one (1) week left of his promotional probation. Then, Defendant Long and Ms. Kurek informed Mr. Glynn that was being terminated for lying on his employment applications.

40. Specifically, Defendant Long referenced a 42-page document that he claimed to have obtained from Buckeye regarding Mr. Glynn's termination and claimed that Mr. Glynn had lied about this termination.

41. Mr. Glynn expressed shock in response to the news that he was being terminated from the Fire Department, and in particular, in response to the stated reason for his termination. As stated above, not only did Mr. Glynn not lie about his termination from Buckeye, but he in fact volunteered additional information surrounding the circumstances of his termination in both the 2020 and 2021 Applications and in his initial employment interviews.

1303179.1

42. Further, when Mr. Glynn sought a copy of the 42-page document from Buckeye purportedly relied on by Defendant Long in his decision to terminate Mr. Glynn, the Chief refused to provide him with one.

43. Additionally, El Mirage took the position that because Mr. Glynn was still a probationary employee at the time of his termination, he had no right to appeal the termination through the City's administrative process. Indeed, when Mr. Glynn presented evidence that the stated reason for his termination was false, the City responded by stating that he was subject to termination "with or without cause and without recourse." A true and correct copy of this correspondence from the City is attached as Exhibit 4.

44. As a result of his termination from the Department, Mr. Glynn has suffered lost wages and benefits, mental and emotional harm, damage to his personal and professional reputations, and other injuries.

**FIRST CAUSE OF ACTION:**
**42 U.S.C. § 1983 – VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREE SPEECH**

45. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 44.

46. The right of the Plaintiff to speak freely about matters of public concern is protected by the First Amendment and Fourteenth Amendment of the U.S. Constitution. The public has a vital interest in free and open discussion on issues of public importance.

47. It is a violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution for public employers, including El Mirage, to discriminate against, discipline, or

10

discharge its employees in retaliation for engaging in speech about matters of public concern as private citizens.

48. Mr. Glynn's speech to City and Fire Department officials regarding high employee turnover, which negatively affects the efficient operations of the Fire Department and therefore public safety, constitutes speech about matters of public concern which is protected by the First and Fourteenth Amendments.

49. Additionally, Mr. Glynn's speech regarding the City's potential violation of wage and hour law and the City's refusal to comply with the Arbitration Decision, as well as the DOL complaint filed by Mr. Glynn, was made to address department-wide problems and the collective grievances of Fire Department employees. Therefore, this also constitutes speech about matters of public concern and is protected by the First and Fourteenth Amendments.

50. Mr. Glynn's speech on these matters was made not as a public employee, but rather as a private citizen, as this speech was made in his capacity as Vice President of the Association and on behalf of all affected Fire Department employees. Thus, his speech is protected by the First and Fourteenth Amendments.

51. Defendants discriminated against and ultimately discharged Mr. Glynn in retaliation for engaging in the above-described protected speech activity. Defendants' stated reason for terminating Mr. Glynn's employment is false and pretextual.

52. Through this conduct, Defendants retaliated against Mr. Glynn in violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution. Defendants'

conduct unlawfully chills free and open discussion on issues of public importance and intimidates other Fire Department employees and members of the community from similarly engaging in protected speech.

53. In retaliatorily terminating Mr. Glynn's employment, Defendants acted under color of State law, as defined in 42 U.S.C. § 1983. Defendants' actions were unprivileged and not subject to any immunity.

54. Thus, Defendants, individually, separately, and/or jointly are fully liable to Mr. Glynn based on their authority and actual decisions or omissions. In addition, such unlawful actions, decisions, and omissions were based on the policymaking and final decision-making authority of the Defendants, and were based on the policy, custom, and practice of Defendants.

55. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

56. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

57. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants retaliating against and terminating him in violation of the First and Fourteenth Amendments.

58. Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**SECOND CAUSE OF ACTION:**
**42 U.S.C. § 1983 – VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREE ASSOCIATION**

59. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 58.

60. The right of the Plaintiff to freely associate with an organization of other Fire Department employees is protected by the First Amendment and Fourteenth Amendment of the U.S. Constitution. The public has a vital interest in such free association.

61. It is a violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution for public employers, including El Mirage, to discriminate against, discipline, or discharge its employees for exercising their rights to free association.

62. During his employment with the Fire Department, Mr. Glynn was a member of, actively participated in, and served as the elected Vice President of IAFF Local 4361, a labor organization of other fire protection personnel employed by Defendants. Mr. Glynn's right to so associate with Local 4361 is protected by the First and Fourteenth Amendments.

13

1303179.1

63. At all relevant times, Defendants were aware of Mr. Glynn's association with Local 4361.

64. Defendants' decision to terminate Mr. Glynn's employment was made amid his ongoing meetings and discussions with City and Fire Department officials in which he, in his capacity as Local 4361 Vice President, raised the collective concerns of his fellow Fire Department employees. Indeed, Defendants discharged Mr. Glynn a mere three (3) days after his meeting with Councilwoman Winston in which he discussed these concerns.

65. The timing and context of Defendants' decision to terminate Mr. Glynn's employment make clear that his termination was made in retaliation for his protected association with Local 4361 and not for the reason stated, which is plainly pretextual.

66. By engaging in this conduct, Defendants retaliated against Mr. Glynn in violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution. Defendants' conduct unlawfully chills the free association with Local 4361, among other organizations, and intimidates other Fire Department employees and members of the community from similarly associating with or actively participating in Local 4361.

67. Further, in retaliatorily terminating Mr. Glynn's employment, Defendants acted under color of State law, as defined in 42 U.S.C. § 1983. Defendants' actions were unprivileged and not subject to any immunity.

68. Thus, Defendants, individually, separately, and/or jointly are fully liable to Mr. Glynn based on their authority and actual decisions or omissions. In addition, such unlawful actions, decisions, and omissions were based on the policymaking and final decision-making

authority of the Defendants, and were based on the policy, custom, and practice of Defendants.

69. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

70. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

71. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants retaliating against and terminating him in violation of the First and Fourteenth Amendment.

72. Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

1303179.1

### THIRD CAUSE OF ACTION:
### A.R.S. § 23-1501 – VIOLATION OF THE ARIZONA EMPLOYMENT PROTECTION ACT

73. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 72.

74. Arizona law protects an employee from a wrongful, retaliatory termination based upon the employee's disclosure of conduct that he reasonably believes violates or may violate state law. A.R.S. §§ 23-1501(A)(3)(c)(i), (ii).

75. Mr. Glynn, in good faith and on behalf of his fellow Fire Department employees, raised concerns to various City and Fire Department employees based on his reasonable belief that El Mirage was violating state law by failing to honor the terms of the MOU and by averaging overtime pay across multiple workweeks.

76. Defendants' conduct in terminating Mr. Glynn's employment in the midst of his advocacy and speech on these issues was in violation of Arizona state law. A.R.S. §§ 23-1501(A)(3)(c)(i), (ii).

77. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

### FOURTH CAUSE OF ACTION:
### ARIZ. REV. STAT. § 23-1411(A) – VIOLATION OF ARIZONA PUBLIC SAFETY EMPLOYEE ACT

78. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 77.

1303179.1

79. The Arizona Public Safety Employee Act makes it a violation of state law for a city to discharge, discipline, or discriminate against public safety employees, including fire fighters, for joining a labor union or participating in collective bargaining. Ariz. Rev. Stat. § 23-1411(A).

80. During his employment with the Fire Department, Mr. Glynn was a member of, actively participated in, and served as the elected Vice President of IAFF Local 4361, a labor organization of other fire protection personnel employed by Defendants. Mr. Glynn's right to so associate with Local 5026 is protected by Arizona state law.

81. At all relevant times, Defendants were aware of Mr. Glynn's association with Local 4361.

82. Defendants' decision to terminate Mr. Glynn's employment was made amid his ongoing meetings and discussions with City and Fire Department officials in which he, in his capacity as Local 4361 Vice President, raised the collective concerns of his fellow Fire Department employees. Indeed, Defendants discharged Mr. Glynn a mere three (3) days after his meeting with Councilwoman Winston in which he discussed these concerns.

83. The timing and context of Defendants' decision to terminate Mr. Glynn's employment make clear that his termination was made in retaliation for his union activity and not for the reason stated, which is plainly pretextual.

84. By engaging in this conduct, Defendants, acting individually, separately, and/or jointly, acted contrary to the declared public policy of the State of Arizona and in violation of Ariz. Rev. Stat. § 23-1411(A).

1303179.1

85. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established statutory rights which a reasonable person would have known.

86. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

**FOURTH CAUSE OF ACTION:**
**29 U.S.C. § 215(a)(3) – VIOLATION OF THE FLSA ANTI-RETALIATION PROVISION**

87. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 86.

88. The anti-retaliation provision of the FLSA makes it a violation of the statute for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the statute. 29 U.S.C. § 215(a)(3).

89. By raising his concerns about the Department's potential violations of the FLSA during meetings with City management and filing a DOL complaint challenging the City's pay practices, Mr. Glynn engaged in protected FLSA activity.

90. Furthermore, Mr. Glynn clearly suffered an adverse employment action when the City terminated his employment.

91. Finally, the timing and context make plain that the City's decision to terminate Mr. Glynn's employment was in response to Mr. Glynn's protected FLSA activity.

18

92. As such, the City's decision to terminate Mr. Glynn's employment constitutes unlawful retaliation under § 215(a)(3).

93. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully requests the Court:

A. Declare that Defendants violated Plaintiff's Constitutional rights by unlawfully depriving Plaintiff of his rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution;

B. Declare that Defendants violated Plaintiff's statutory rights as guaranteed by A.R.S. §§ 23-1501(A)(3)(c)(i), (ii); A.R.S. § 23-1411(A); and 29 U.S.C. § 215(a)(3);

C. Order a complete and accurate accounting of all the compensation and relief to which Plaintiff is entitled;

D. Award Plaintiff monetary damages in the form of backpay compensation, lost benefits, unpaid entitlements, plus prejudgment and post-judgment interest;

E. Award Plaintiff compensatory damages for the violations of Plaintiff's rights and the harm to his reputation, humiliation, emotional and mental anguish, and for other financial and consequential harm and injuries he has suffered as a result of Defendants' violative conduct;

1303179.1

F.  Award Plaintiff punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Plaintiff's Constitutional and statutory rights;

G.  Order Defendants to reinstate Plaintiff to his former position, or in the alternative, award front pay;

H.  Award reasonable attorneys' fees and costs to Plaintiff; and

I.  Grant all other relief that the Court deems just and appropriate.

DATED this 11th day of April, 2023.

SHIELDS PETITTI & ZOLDAN, PLC

By /s/ Michael J. Petitti, Jr.
Michael J. Petitti, Jr.
Paige C. Pataky
5090 N. 40th Street, Suite 207
Phoenix, Arizona 85018

MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C.

By /s/ Lauren McDermott.
Lauren McDermott (Pro hac vice pending)
1920 L Street, N.W., Suite 400
Washington, D.C. 20036

Attorneys for Plaintiff

1303179.1