**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Glynn,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of El Mirage, et al.,<br><br>　　　　　Defendants. | No. CV-23-00612-PHX-MTL<br><br>**ORDER** |

　　　　Plaintiff Shannon Glynn alleges that Defendants, the City of El Mirage (the "City"), City Manager Crystal Dyches, Human Resources ("HR") Director Dawn Kurek, and Fire Chief Michael Long, violated state and federal law when they retaliated against him, resulting in his termination. Defendants move to dismiss Mr. Glynn's § 1983 claims against the City, Dyches, Kurek, and Long, arguing that he fails to state a facially plausible claim and cannot establish *Monell* municipal liability. Defendants also move to dismiss Mr. Glynn's state law claims, alleging that his Notice of Claim fails to comply with A.R.S. § 12-821.01(A). For the reasons stated below, the Court will grant in part, and deny in part, Defendants' Partial Motion to Dismiss (the "Motion").

**I.　　BACKGROUND**

　　　　Mr. Glynn has been a firefighter for twenty-six years. (Doc. 10 ¶ 12.) Mr. Glynn worked as a firefighter for the City of Buckeye Fire Department from about January 2005 to January 2019. (*Id.* ¶ 14.) He then applied to work as a firefighter for the City in October 2020. (*Id.* ¶ 15.) In his job application, Mr. Glynn disclosed that he "[w]as terminated by

the city of Buckeye after being offered an opportunity to resign from a citizen complaint." (*Id.* ¶ 18.)

Mr. Glynn interviewed with the City Hiring Board, where he explained that his Buckeye Fire Department termination related to an incident involving a former girlfriend and her ex-husband (the "Buckeye Incident"). (*Id.* ¶¶ 19–20.) He admitted remorse and explained that the incident taught him how to be a better fire service member. (*Id.* ¶ 21.) The City Hiring Board thanked Mr. Glynn for his honesty and did not ask him questions about the Buckeye Incident. (*Id.* ¶ 22.) Mr. Glynn participated in two additional interviews with City officials, including Defendant Fire Chief Long. (*Id.* ¶¶ 23–24.) But the City officials did not ask about the Buckeye Incident at either interview. (*Id.* ¶ 24.)

The City hired Mr. Glynn as a firefighter in March 2021. (*Id.* ¶ 25.) As a new employee, Mr. Glynn was subject to the City's one-year probation period policy. (*Id.*) In October 2021, Mr. Glynn applied for a promotion as a fire engineer for the City, where he again disclosed the Buckeye Incident. (*Id.* ¶¶ 27–29.) The City promoted Mr. Glynn to fire engineer in November 2021, and he began a new one-year probation period. (*Id.* ¶ 30.)

Throughout his employment with the City's Fire Department, Mr. Glynn was a member and Vice President of the Northwest Valley Firefighters Association, International Association of Firefighters Local 4361 (the "Local 4361"), a labor union that advocates for employees in the Fire Department. (*Id.* ¶ 31.) Local 4361's objectives are to remedy high employee turnover and advocate for firefighter compensation. (*Id.* ¶¶ 33–34.) Mr. Glynn routinely spoke with officials in the Fire Department and City regarding Local 4361's objectives and the Memorandum of Understanding ("MOU") between the City and Local 4361. (*Id.* ¶¶ 32–33.)

In August 2022, Mr. Glynn, as Vice President of Local 4361, inquired with the United States Department of Labor regarding firefighter pay because he believed "El Mirage's practice of averaging firefighters' overtime pay across several workweeks could be a violation of applicable wage and hour laws." (*Id.* ¶ 34.) After Mr. Glynn notified the City that he submitted the inquiry to the Department of Labor, Deputy City Manager Robert

Nilles responded approvingly because he was confident he was not violating laws relating to firefighter pay. (*Id.* ¶ 35.)

Mr. Glynn also raised concerns regarding the City making certain payments to firefighters as required by the MOU and a December 2021 arbitration decision (the "Arbitration Decision"). (*Id.* ¶ 36.) On October 26, 2022, Mr. Glynn met with Defendants Dyches and Kurek, along with non-party Deputy City Manager Nilles, to discuss the turnover and pay issues. (*Id.* ¶ 37.) At that meeting, Mr. Glynn notified Defendants Dyches and Kurek, and Deputy City Manager Nilles, that although it was not Local 4361's preference, he sought legal counsel to review the matter and bring a lawsuit. (*Id.*) Mr. Glynn, in his capacity as Local 4361's Vice President, then met with other City officials to discuss the Arbitration Decision's recommendations. (*Id.* ¶¶ 38–39.)

Shortly thereafter, on November 7, 2022, the City terminated Mr. Glynn. (*Id.* ¶ 40.) At his termination meeting, Defendants Kurek and Long advised Mr. Glynn that he had one week left of his promotional probation and that the City was terminating him "for lying on his employment applications" regarding the Buckeye Incident. (*Id.* ¶¶ 40–41.) Mr. Glynn "expressed shock in response to the news that he was being terminated" because he "did not lie about his termination from Buckeye" and "volunteered additional information surrounding the circumstances of his [Buckeye] termination" in his applications and interviews with the City. (*Id.* ¶ 42.) Mr. Glynn alleges that Defendant Long refused to provide him with a copy of the records that the City used to conclude that he lied about the Buckeye Incident. (*Id.* ¶ 43.) The City explained that because Mr. Glynn was still a probationary employee when he was terminated, he could not appeal his termination through the City's administrative process. (*Id.* ¶ 44.)

Mr. Glynn then commenced this action against the City, Dyches, Kurek, and Long. (Doc. 10.) In his Complaint, Mr. Glynn asserts § 1983 claims against the City alleging that it violated his First and Fourteenth Amendment rights. (*Id.* ¶¶ 7, 48–79.) Specifically, he argues that the City's termination decision was retaliatory against his protected speech activity for Local 4361, and that "Defendants' stated reason for terminating [his]

employment is false and pretextual." (*Id.* ¶ 54.) Mr. Glynn contends that Defendants' conduct "unlawfully chills free and open discussion on issues of public importance and intimidates other[s] . . . from similarly engaging in protected speech." (*Id.* ¶ 55.) Mr. Glynn also alleges that "the City's policy and practice of terminating probationary employees 'with or without cause and recourse,' and without regard to whether such termination would otherwise violate a probationary employee's constitutional or other guaranteed rights." (*Id.* ¶ 57.) Finally, Mr. Glynn argues that because Defendants Long and Kurek "possess the authority to direct, prepare, and review any necessary department-specific policies for the Fire Department," they are "final policymakers for City policy [regarding] probationary Fire Department employees." (*Id.* ¶ 58.)

Mr. Glynn raises a § 1983 claim against Defendant Dyches in her individual capacity. (*Id.* ¶ 8.) Mr. Glynn alleges that Dyches violated his First and Fourteenth Amendment rights because, as the City Manager, she "approves termination decisions by Department Directors during an employee's probationary periods." (*Id.*) Mr. Glynn asserts that Dyches approved his termination after she attended a meeting where he raised Local 4361's staffing and pay issues. (*Id.* ¶¶ 37, 40.)

Mr. Glynn brings § 1983 claims against Defendants Kurek and Long in their official and individual capacities. (*Id.* ¶¶ 9–10.) He argues that Kurek and Long violated his First and Fourteenth Amendment rights because they advised him of his termination soon after he raised Local 4361's concerns regarding staffing and pay issues. (*Id.* ¶¶ 9–10, 37, 40.)

Additionally, Mr. Glynn raises a claim under the Fair Labor and Standards Act, 29 U.S.C. § 215(a)(3), claiming that Defendants' decision to terminate him constitutes unlawful retaliation under § 215(a)(3). (*Id.* ¶¶ 94–100.) Mr. Glynn further alleges that Defendants violated Arizona's Public Safety Employee Act and Arizona's Employment Protection Act by terminating him for his protected activity. (*Id.* ¶¶ 80–93.) *See* A.R.S. § 23-1411(A); *see also* A.R.S. §§ 23-1501(A)(3)(c)(i)-(ii).

Defendants move to dismiss (1) Mr. Glynn's § 1983 claims against the City, (2) the § 1983 claim against Defendant Dyches in her individual capacity, (3) the § 1983 claims

against Defendants Long and Kurek in their individual and official capacities, and (4) the Arizona's Public Safety Employee Act and Arizona's Employment Protection Act claims as to all Defendants. (Doc. 13.)

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

The Court must accept material allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## III. DISCUSSION

### A. Federal Claims

Mr. Glynn raises two § 1983 claims. He alleges that Defendants violated his First and Fourteenth Amendment rights to free speech and free association. (Doc. 10 ¶¶ 48–79.) He asserts a *Monell* claim alleging that the City's implementation of its official policy regarding the termination of probationary employees caused his constitutional injury. (*Id.* ¶ 57.) Mr. Glynn also claims Defendants Long and Kurek, who unconstitutionally terminated him, have final policymaking authority over employees at the City's Fire Department. (*Id.* ¶ 58.)

Defendants argue that: (1) the claims against the City should be dismissed for failure

to satisfy the *Monell* liability standard; (2) the claims against Defendants Dyches, Kurek, and Long in their individual capacities should be dismissed for failure to plead sufficient factual allegations; and (3) the claims against Defendants Kurek and Long in their official capacities should be dismissed because they are duplicative. (Doc. 13 at 1–8, 15–17.)

### 1.     *Monell* Claim Against the City

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality generally may not be held liable for a § 1983 violation under a theory of *respondeat superior* for the actions of its subordinates. A plaintiff can raise a *Monell* claim against a municipality "(1) when 'implementation of its official policies or established customs inflicts the constitutional injury,' (2) 'for acts of omission, when such omissions amount to the local government's own official policy,' or (3) 'when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1063 (D. Ariz. 2020) (internal citation omitted); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010). To successfully plead a *Monell* claim, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

Mr. Glynn asserts two theories in support of his *Monell* liability claim against the City. Both theories, however, rely on conclusory allegations.

#### a.     Official Policy Theory

To defeat Defendants' Motion, Mr. Glynn's *Monell* violation regarding an official policy theory must (1) identify the challenged policy; (2) explain the policy's deficiency; (3) explain how the policy caused the plaintiff harm; and (4) explain how the policy amounted to deliberate indifference. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see also Sekerke v. City of Nat'l City*, No. 19-CV-1360-LAB (MSB), 2020

WL 4435416, at *11 (S.D. Cal. Aug. 3, 2020). First, Mr. Glynn identifies the City's probationary employee's termination policy. (Doc. 10 ¶ 45.) The policy states that "[d]uring the probationary period, a newly hired or promoted employee may be terminated at any time by the Department Director with the approval of the City Manager, with or without cause and without recourse." (*Id.*) Specifically, Mr. Glynn alleges that his termination decision "was made pursuant to the City's policy and practice of terminating probationary employees 'with or without cause and without recourse,' and without regard to whether such termination would otherwise violate a probationary employee's constitutional or other guaranteed rights." (*Id.* ¶ 57.) But that is where Mr. Glynn's satisfaction of the *Monell* standard ends. Other than identifying a policy, Mr. Glynn fails to raise factual allegations to demonstrate (1) the policy's deficiencies, (2) how those deficiencies were the "moving force" behind his injuries, and (3) that the deficiencies made it obvious that the constitutional injury, his termination, would occur. *See Dougherty*, 654 F.3d at 900.

A viable *Monell* claim must contain factual allegations to support causation between the City's policy and his purported injury. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Sekerke*, 2020 WL 4435416, at *12. In *Andrich v. Kostas*, the plaintiff raised a *Monell* claim against the City of Phoenix on an official policy theory and identified several police force policies that the City maintained that allegedly inflicted constitutional injuries. 470 F. Supp. 3d at 1064. The court there found the plaintiff's allegations were conclusory because he failed to raise factual allegations indicating that the policies were the "moving force" behind his injuries. *Id.*

Mr. Glynn's *Monell* claim similarly falls short because he relies on conclusory allegations. Mr. Glynn alleges only that his termination decision was made in accordance with the City's neutral policy "without regard to whether such termination would otherwise violate a probationary employee's constitutional or other guaranteed rights." (Doc. 10 ¶¶ 57, 73.) Like the plaintiff in *Andrich*, Mr. Glynn only asserts a conclusory allegation that the policy resulted in his termination, violating his constitutional rights.

1   Accordingly, this claim lacks any factual allegations that would separate it from the
2   "formulaic recitation of a cause of action's elements" deemed insufficient by
3   *Twombly*. *See* 550 U.S. at 555; *see also Dougherty*, 654 F.3d at 900.

4         Mr. Glynn's allegation that the City's reliance on the probationary policy was
5   pretextual is also conclusory. (Doc. 14 at 4, Doc. 10 ¶ 44.) If the City's reliance on the
6   policy was "purely pretextual," then the policy could not have caused Mr. Glynn's
7   termination and been the "moving force behind [his] injuries." *Andrich*, 470 F. Supp. 3d
8   at 1064.

9         Additionally, Mr. Glynn offers no factual allegations to suggest how the City's at-
10  will termination policy would have resulted in his "unconstitutional" termination,
11  amounting to "deliberate indifference." *See Dougherty*, 654 F.3d at 900 (noting that the
12  "deliberate indifference" *Monell* element is met when a violation of constitutional rights is
13  "obvious"). And in Arizona, the "employment relationship is [presumptively] severable at
14  the pleasure of either the employee or the employer." A.R.S § 23-1501(A)(2). Therefore,
15  it is unclear how the City's standard termination policy would result in an unconstitutional
16  retaliatory termination, and Mr. Glynn does not allege otherwise. Without supporting
17  factual allegations, Mr. Glynn has not stated a viable *Monell* claim against the City on the
18  theory of an unconstitutional implementation of official policy.

19          **b.**    **Final Policy-Making Theory**

20        Mr. Glynn's second *Monell* theory alleges that Fire Chief Long and HR Director
21  Kurek are "final policymakers for City policy with respect to the termination of
22  probationary employees" because they "possess the authority to direct, prepare, and review
23  any necessary department-specific policies for the Fire Department." (Doc. 10 ¶ 58.)

24        Courts scrutinize a plaintiff's final policymaker theory because holding a
25  municipality liable for the decisions of officers without final authority is a prohibited
26  application of *respondeat superior* against a municipality. *Pembaur v. City of Cincinnati*,
27  475 U.S. 469, 478 (1986). Municipal liability only attaches where "the decisionmaker
28  possesses final authority to establish municipal policy with respect to the action ordered"

and "is responsible for establishing final government policy respecting such activity." *Id.* at 482. And the fact that an official "has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.*

Mr. Glynn alleges that Fire Chief Long and Director Kurek have discretion over Fire Department policy. (Doc. 10 ¶ 45.) This, however, is insufficient to establish a basis for municipal liability because Long and Kurek would have to be responsible for establishing the City's employment policy. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (holding that district courts must identify official policymakers based on "state and local positive law") (internal quotations omitted). But responsibility for establishing the City's employment policy rests with the City Council under El Mirage, Ariz., Code of Ordinances § 30.01-07. The City Code makes clear that the Council has the authority to enact and modify personnel policies: "[t]he Council may adopt, by resolution, rules and regulations to give effect to this subchapter, which may be modified or changed from time to time, but the rules and regulations shall follow the generally accepted principles of good personnel administration." *Id.* at § 30.03. Accordingly, Mr. Glynn failed to plead factual allegations to show that Long and Kurek established the City's employment policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (holding that "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it").

In *Gillette v. Delmore*, the plaintiff, also a firefighter, raised a *Monell* claim against the City of Eugene, Oregon under the theory that the fire chief was a final policymaker. 979 F.2d 1342, 1350 (9th Cir. 1992). The court recognized that the fire chief had authority to hire and fire personnel. *Id.* The court, however, determined that the fire chief was not a final policymaker after reviewing the Eugene City Charter because he was not responsible for establishing the City's employment policy. *Id.* Mr. Glynn's final policymaker arguments are nearly identical to the plaintiff's assertions in *Gillette*. Like in *Gillette*, this

Court's review of local law makes clear that Defendants lack authority to make City employment policy. Because the El Mirage Code of Ordinances only grants authority to the City Council to make City employment policy, Long and Kurek are not final policymakers. And because both of Mr. Glynn's theories to establish *Monell* liability against the City fail, the § 1983 claim against the City will be dismissed.

### 2. Claims Against Defendants' Individual Capacities

Mr. Glynn alleges that Defendants Dyches, Kurek, and Long violated § 1983 in their individual capacities by depriving him of his constitutional free speech and association rights under the First and Fourteenth Amendments. (Doc. 10 ¶¶ 8–10, 48–79.) Defendants argue that Mr. Glynn's § 1983 claims against the individual defendants are not facially plausible. (Doc. 13 at 15–17.)

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And a court must "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022).

To be individually liable under § 1983, Dyches, Kurek, and Long, must be "integral participant[s]" in the alleged deprivation of constitutional rights. *See Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004). This standard prohibits attaching liability to "mere bystander[s]" who had "no role in the unlawful conduct." *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996) (holding that individual liability cannot attach where the deprivation of rights results from a "team effort"). However, "integral participation does not require that each [individual's] actions themselves rise to the level of a constitutional violation." *Boyd*, 374 F.3d at 780. Instead, individuals must have "participated in some meaningful way" for § 1983 liability to attach. *Id.*

A defendant, like Long, Kurek, and Dyches, may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*,

885 F.2d 642, 646 (9th Cir. 1989)). And in a § 1983 First Amendment employer retaliation case, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Drawing all reasonable inferences in Mr. Glynn's favor, and as further explained below, the Court finds that Mr. Glynn pleads sufficient factual allegations to support "a series of acts" that could establish a "causal connection" between Defendants' wrongful conduct and the constitutional violations. *Starr*, 652 F.3d at 1207 (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)).

### a. Defendant Dyches

Mr. Glynn alleges that "City Manager Dyches approves termination decisions by Department Directors during probationary periods." (Doc. 10 ¶ 8.) Accordingly, Mr. Glynn claims that "Defendant Dyches approved the decision to terminate Mr. Glynn's employment." (*Id.* ¶ 59.) Mr. Glynn also alleges that Dyches was present at the October 26, 2022 meeting where he spoke to City officials regarding the alleged staffing and pay issues. (*Id.* ¶ 37.) There is a reasonable inference that Dyches approved Mr. Glynn's November 7, 2022 termination decision "on the heels of" his protected speech activity. *See Villiarimo*, 281 F.3d at 1065.

### b. Defendant Kurek

Mr. Glynn also sufficiently alleges Defendant Kurek could have partaken in the termination decision. Mr. Glynn alleged that Kurek was present in the October 26, 2022 meeting where the purported protected activity—raising concerns and threatening legal action regarding staffing and pay issues—took place. (Doc. 10 ¶ 37.) Mr. Glynn also explained that Kurek advised him of his termination three days later, on November 7, 2022, for "lying on his employment applications." (*Id.* ¶ 40.) Again, drawing all reasonable inferences in Mr. Glynn's favor, he sufficiently alleged that Kurek could have been an "integral participant" in the alleged constitutional violation because Kurek was present at both meetings.

          **c.**      **Defendant Long**

Mr. Glynn further alleges that he routinely engaged in protected speech with the Fire Chief, Defendant Long, regarding the pay issues. (*Id.* ¶ 32.) Mr. Glynn also claims that Long advised him of his termination on November 7, 2022. (*Id.* ¶ 40.) Mr. Glynn sufficiently alleges that because Long terminated him after conversations regarding pay issues, Long is an "integral participant" in the alleged constitutional injury.

Taking the allegations in Mr. Glynn's Complaint as true, and drawing all reasonable inferences in his favor, it does not appear "beyond doubt" that Mr. Glynn will be unable to prove facts supporting his claims. His § 1983 claims against Defendants in their individual capacities survive the Motion. *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Boquist*, 32 F.4th at 782.

         **3.**      **Claims Against Defendants' Official Capacities**

Mr. Glynn sues Kurek and Long in both their individual and official capacities. (Doc. 10 ¶¶ 9–10.) Mr. Glynn, however, concedes that "the official capacity claims against Defendants Long and Kurek are duplicative and should be dismissed." (Doc. 14 at 2 n.1.) Accordingly, Mr. Glynn's official capacity claims against Defendants Kurek and Long will be dismissed.

    **B.**    **State Law Claims**

Mr. Glynn asserts violations of the Arizona Employment Protection Act, A.R.S § 23-1501, and the Arizona Public Safety Employment Act, A.R.S. § 23-1411(A). Defendants argue that Mr. Glynn's state law claims should be dismissed for failure to comply with Arizona's notice of claim requirement under A.R.S. § 12–821.01(A). Even when pursuing state-law claims in federal court, a plaintiff must comply with Arizona's notice of claim statute, A.R.S. § 12-821.01. It provides:

> Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts

> sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed. ***The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount***. Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01(A) (emphasis added). "Claims that do not comply with A.R.S. § 12-821.01.A are statutorily barred." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 492 (Ariz. 2007).

As emphasized in the statute's text, claimants must offer a specific dollar amount that will settle the claim if agreed to by the public entity. *Id.* at 493. Mr. Glynn's Notice of Claim states that he would settle for "a reasonable lump sum payment of $510,000 (inclusive of all economic and emotional distress damages)." (Doc. 10-1 at 7.) In a separate paragraph, he also demands for the City to reimburse him "for his attorneys' fees incurred in this dispute." (*Id.*) But there is no monetary amount specified for the attorneys' fees.

The Court in *Bamonte v. City of Mesa*, No. CV 06-01860-PHX-NVW, 2007 WL 2022011, at *6 (D. Ariz. July 10, 2007), considered this issue on similar facts. There, the notice of claim stated that "Plaintiffs would settle for twenty million dollars ($20,000,000) plus attorneys fees and costs." *Id.* The *Bamonte* court found that while the "$20,000,000 is on its own an unqualified and specific amount . . . the additional demands for unspecified fees and costs introduced uncertainty into the proposed settlement value." *Id.*

The same is true here. Mr. Glynn's request for $510,000 is "an unqualified and specified amount." (Doc. 10-1 at 7.) But Mr. Glynn's separate demand for an unspecified amount of attorneys' fees introduces uncertainty to the settlement offer, particularly when those fees could total a substantial amount. (*Id.*) This uncertainty violates A.R.S § 12-821.01(A), which demands that the claim "contain a specific amount for which the claim can be settled." And the purpose of Arizona's notice of claim statute is to "permit the possibility of settlement prior to litigation" and "assist [Defendants] in financial planning and budgeting." *Martineau v. Maricopa Cnty.*, 86 P.3d 912, 915–916

(Ariz. Ct. App. 2004).

Mr. Glynn argues that he "invited the City to contact his counsel if it had any questions or believed it needed additional information." (Doc. 14 at 13, Doc. 10-1 at 7.) Defendants, however, are not legally obligated to notify Mr. Glynn of his notice of claim's deficiencies. *See Yahweh v. City of Phoenix*, 400 P.3d 445, 447 (Ariz. Ct. App. 2017); *see also Backus v. State*, 203 P.3d 499, 505 (Ariz. 2009) (noting that public entities are not required to request additional facts when a plaintiff's notice of claim is deficient). Accordingly, Mr. Glynn's Notice of Claim does not comply with A.R.S. § 12-821.01(A) because it lacks a specific amount for which his claim can be settled. His state law claims will be dismissed with prejudice.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part, and denying in part, Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint (Doc. 13).

**IT IS FURTHER ORDERED** dismissing Plaintiff's first and second causes of action raised under 42 U.S.C. § 1983 against the City without prejudice.

**IT IS FURTHER ORDERED** dismissing Plaintiff's first and second causes of action raised under 42 U.S.C. § 1983 against Defendants Kurek and Long in their official capacities with prejudice.

**IT IS FURTHER ORDERED** denying Defendants' Motion with respect to the first and second cause of action raised under 42 U.S.C. § 1983 against Defendants Dyches, Kurek, and Long in their individual capacities.

**IT IS FURTHER ORDERED** dismissing Plaintiff's state law claims, violations of the Arizona Employment Protection Act and Arizona Public Safety Employee Act, with prejudice.

**IT IS FURTHER ORDERED** that the following claims in the First Amended Complaint (Doc. 10) shall remain: the first and second causes of action raised under 42 U.S.C § 1983 against Defendants Dyches, Kurek, and Long in their individual capacities,

and the final cause of action raised under 29 U.S.C. § 215(a)(3) as to all Defendants.

**IT IS FINALLY ORDERED** granting Plaintiff leave to amend his complaint. Should Plaintiff choose to file a second amended complaint, he must do so no later than 14 days from the date of this Order.

Dated this 13th day of October, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge